**J.J.B. HILLIARD, W.L. Lyons, Inc., Appellant,**

v.

**COCA–COLA BOTTLING MIDEAST, INC., Appellee.**

Court of Appeals of Kentucky.

May 31, 1985.

James E. Milliman, Barbara Reid Hartung, Greenebaum Doll & McDonald, Louisville, for appellant.

Edward H. Stopher, Robert M. Brooks, Boehl Stopher Graves & Deindoerfer, Louisville, Timothy Cone, Stoll, Keenon & Park, John G. Atchison, Jr., Joseph Miller, Gess, Mattingly, Saunier & Atchison, Lexington, for appellee.

Before COMBS, HOWARD and LESTER, JJ.

COMBS, Judge.

This is an appeal from the summary judgment of the Jefferson Circuit Court, which determined that appellant is not entitled to a fee from appellee's sale to Proctor & Gamble under the extension clause of a brokerage agreement.

We note at the outset that the trial court rendered its decision in the form of a "summary judgment." However, this action was tried before the court sitting without a jury. After reviewing the entire record, which consisted of voluminous depositions and other documents, the lower court set forth findings of fact and conclusions of law to support its decision. Therefore, this action is more accurately characterized as a trial by deposition under CR 43.04(1) and our review is limited by the "clearly erroneous" rule of CR 52.01.

In May of 1981, appellee, Coca-Cola Bottling Mideast, Inc. (Coke Mideast), retained appellant, Hilliard, Lyons and Goldman, Sachs as co-brokers to promote the sale of Coke Mideast. Under the brokerage agreement, appellant and Goldman, Sachs would receive a 2% commission if their efforts produced a sale of Coke Mideast. Although the agreement could be terminated at any time, it included an extension clause assuring the broker "full compensation in

the event that at any time prior to the expiration of two years after the termination of this authorization a transaction ... is consummated with any party with which discussions looking to such a transaction ... have been held during the period of our authorization."

During the listing period, appellant and Goldman, Sachs distributed a memorandum describing appellee's operation to potential buyers, but neither broker contacted Proctor & Gamble. After failing to secure a purchaser for appellee, appellant and Goldman, Sachs lapsed into a period of inactivity and stagnation that lasted into the fall of 1981. In October of 1981 Goldman, Sachs made a fleeting effort to interest Crush International USA, Inc. (Crush) in Coke Mideast by sending it the sales memorandum but Crush's president flatly refused to review or discuss the information. Crush is a wholly-owned subsidiary of Proctor & Gamble, but it is a separate legal and corporate entity.

Appellee terminated the unsatisfactory brokerage arrangement with appellant and Goldman, Sachs on December 18, 1981, and retained a new broker, John Groobey, in January of 1982. Groobey approached many companies in his efforts to locate a buyer for Coke Mideast, including Proctor & Gamble. Five months later Proctor & Gamble agreed to meet with the owners of Coke Mideast and look over its operation. When Goldman, Sachs learned of Proctor & Gamble's elevated interest in Coke Mideast, they contacted its owners to obtain permission to switch hats and represent Proctor & Gamble in the sale. When the sale was finally consummated in June of 1983, John Groobey represented appellee and Goldman, Sachs represented Proctor & Gamble.

Appellant initiated this action to recover a fee under the extension clause of the 1981 brokerage agreement on the theory that Goldman, Sachs' brief and unproductive encounter with Crush constituted "discussions looking to a transaction" with Proctor & Gamble. Since Proctor & Gamble acquired Coke Mideast within two years of December 18, 1981, appellant reasons that it should receive a fee under the extension clause.

After considering the whole record, the lower court found that appellant did not have discussions with Proctor & Gamble looking to the sale of Coke Mideast within the meaning of the brokerage agreement. Although appellant's co-broker attempted to reach Crush, a Proctor & Gamble subsidiary, the trial court recognized that the two are separate legal entities and concluded that dealing with one does not constitute dealing with the other. Accordingly, the lower court entered judgment for appellees.

Appellant does not attack the trial court's findings of fact and conclusions of law, but essentially presents its case anew to this court. However, our review of the entire record convinces us that the trial court's decision was absolutely correct by any standard. The record reveals no evidence of any contact between appellant or its co-broker and Proctor & Gamble during the term of the brokerage agreement. Appellant's only colorable claim to a fee arises from Goldman, Sach's unsuccessful attempt to present Crush with information on appellee, but Crush and Proctor & Gamble are separate and distinct legal entities under Kentucky law. *See Harlan Public Service Company v. Eastern Construction Company*, 254 Ky. 135, 71 S.W.2d 24 (1934). Even if we thought that Crush was Proctor & Gamble's alter ego in this case, we agree with the trial court's conclusion that a single abortive attempt to establish contact with Crush does not constitute "discussions looking to a transaction" within the meaning of the 1981 brokerage agreement. Not only are the trial court's findings safe from upset under CR 52.01, we think the record compels judgment in favor of appellee as a matter of law.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.